```
              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION
```

City of Cincinnati,            :   Case No. 1:12-cv-104
                               :
    Plaintiff,                 :
                               :
vs.                            :
                               :
Deutsche Bank National Trust   :
Co., et al,                    :
                               :
    Defendants.                :

**ORDER**

Before the Court is Plaintiff's motion to remand this case to state court. (Doc. 27)  The Defendants oppose the motion (Doc. 33), and contemporaneously filed a motion to realign the parties. (Doc. 34)  Both of these motions are fully briefed and ready for decision.  Further briefing on the Defendants' motions to dismiss (Docs. 38, 40 and 41) has been stayed pending the Court's decision on remand.  For the following reasons, the Court concludes that the motion to remand will be denied.

**FACTUAL BACKGROUND**

The City of Cincinnati filed its complaint against Deutsche Bank and several related entities, Wells Fargo Bank, and the Treasurer of Hamilton County, Ohio in the Ohio common pleas court on December 21, 2011.  (Doc. 18)  The City amended its complaint a few weeks later, and then filed a second amended complaint in this Court on February 17, 2012.  (Doc. 29)  The City generally

seeks injunctive and declaratory relief and money damages against the Defendant banks, alleging that they have engaged in "unlawful public nuisance property maintenance business practices" within the City. The operative complaint initially alleges that Defendants unlawfully

> ... decide whether or not to comply with state and local property maintenance laws based solely on the economics associated with the particular property they own. Thus, in some neighborhoods in the City, the banks routinely ignore state and local property maintenance laws because compliance with these laws requires the banks to expend funds they do not expect to recover. If doing so does not provide an economic benefit, Deutsche Bank and Wells Fargo will not comply with the law. This unlawful public nuisance business practice leads directly to blighted public nuisance properties in the City and systematically privatizes economic gain (to the benefit of Deutsche Bank and Wells Fargo) and socializes economic loss (to the detriment of the City and its citizens).

(Doc. 29, paragraph 1) The City brings several claims for damages under sections of the Cincinnati Municipal Code; state law statutory and common law public nuisance claims which also seek remediation orders; a claim for intentional interference with the City's fiduciary responsibilities to its citizens; and a claim for punitive damages.

Defendants timely removed the case, asserting that diversity jurisdiction exists among the City and the non-resident Defendant banks because the County Treasurer should be realigned as a plaintiff, as its interests are fully aligned with those of the

City. Alternatively, Defendants assert that the County Treasurer is a nominal party and/or was fraudulently joined, and his citizenship should be disregarded in determining the propriety of jurisdiction over this action. (Doc. 1)

Defendants concede that this Court remanded a similar case brought by the City against these Defendants. See Cincinnati v. Deutsche Bank Nat. Trust, et al, Case No. 1:08-cv-888, Doc. 23, Order of February 10, 2009 remanding to state court. But Defendants rely on the decision in Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co., 621 F.3d 554 (6th Cir. 2010), raising similar claims against several Deutsche Bank entities and which was decided after this Court's prior remand order. The Sixth Circuit affirmed the district court's decision to realign the City of Cleveland, named as a defendant in that case, finding that the City's interests were not adverse to the plaintiff's with respect to the main issue in the lawsuit, whether the defendants were liable under nuisance law for foreclosed and abandoned properties.

In support of removal, Defendants also assert that they were involved in the City's prior state court case from the time it was remanded in February 2009 until August 2011, when the City voluntarily dismissed its claims without prejudice. During that time, the City did not seek any relief against the County Treasurer, and the County did not appear or defend the action in

any meaningful way.  Defendants note that the City's complaint in this case similarly makes no claim against the County Treasurer, and merely alleges that there may be county tax liens against properties the City contends are nuisances.

Defendants also contend that any "hypothetical" adverse interest that may arise between the City and the County with respect to a nuisance claim could only ripen if the City were successful in prosecuting that claim with respect to any of the identified properties, and if there were in fact delinquent property taxes or county assessments on any of those properties. Defendants submit that at the time of removal, only a few of the 419 properties identified in exhibits to the City's complaint were owned by any of the Deutsche Bank entities or Wells Fargo.[1] None of those few properties had any county tax delinquencies, based on information obtained from the county auditor's website. (Doc. 1 at ¶18)

The City has moved to remand, arguing that the Treasurer of Hamilton County is a properly named defendant because the County is a statutory "interested party" to its nuisance claims, and under Ohio law must be joined in this action.  It relies on this

---

[1] The Court notes Defendants' contentions that they do not "own" these properties, and that some of them are sued as trustees of various mortgage-backed securitization trusts that have or had ownership interests.  Defendants also contend that unnamed "loan servicers" are responsible for property maintenance.  The Court need not delve into these issues in order to resolve the pending motions.

Court's conclusion to that effect in the order remanding its prior lawsuit.  It alleges that many of the properties identified in its complaint are in fact delinquent in property taxes, citing the Treasurer's answer to its complaint which generally states that taxes, assessments, and other charges are due against properties identified in the City's complaint.  (Doc. 21)  The City argues that the Sixth Circuit's decision in <u>CHRP v. Deutsche Bank</u> is distinguishable, because the plaintiff in that case was a non-profit community development corporation operating within the City of Cleveland, and that CHRP and Cleveland shared an interest in blight abatement.  That is not the case with respect to the City of Cincinnati and Hamilton County, the City contends, because the county has not enacted legislation targeting property maintenance and is not actively prosecuting remediation efforts in the city.  With regard to the handful of properties Defendants claim have no tax liens against them, the City responds that Exhibits B and C to its complaint identify properties at issue, but that the complaint also alleges:

> Exhibits B and C necessarily cannot include noncompliant properties hereinafter acquired by Deutsche Bank and Wells Fargo.  This information will become available through discovery and the City will supplement its exhibits as necessary.  The prospective properties are within the scope of this [complaint] because they implicate Deutsche Bank's and Wells Fargo's public nuisance business practices that proximately cause the creation and perpetuation of public nuisance properties.  Other noncompliant properties

-5-

>       currently owned by the banks may not yet be
>       known to the City because of the time lag
>       (several weeks to several months) within
>       which new ownership information becomes
>       available from the Hamilton County Auditor.

(Doc. 29, Second Amended Complaint at ¶19) The City essentially argues that the parties are in the same position they were in when this Court remanded the prior lawsuit.

In their combined response and motion to realign the County Treasurer (Docs. 33 and 34), Defendants again contend that the Sixth Circuit's decision in <u>CHRP v. Deutsche Bank</u> requires a different result. They also contend that the undisputed evidence (see Doc. 35, Exhibit C, certified copies of tax statements from the County Auditor's office showing no delinquencies for eight parcels titled in Defendants' names) shows that the County Treasurer is not an "interested party." And unlike the situation before this Court in 2008, when the extent of the County's interests in the City's claims were unsettled, Defendants note many efforts undertaken by the County in the past two years to combat blight, some in conjunction with the City. They alternatively contend that the Court should treat the Treasurer as a nominal party, a dispensable party under Rule 21, or find that the Treasurer was fraudulently joined.

As the parties seeking removal, Defendants have the burden of establishing the existence of federal jurisdiction. "The removal petition is to be strictly construed, with all doubts

resolved against removal." Her Majesty the Queen v. Detroit, 874 F.2d 332, 339 (1989), citing Wilson v. USDA, 584 F.2d 137, 142 (6th Cir. 1978). A "nominal" party is one who has no real and substantial interest in the action or is a mere stakeholder. Its citizenship may be disregarded in determining jurisdiction. See Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461 (1980). To determine if the City's joinder of the County Treasurer is improper or fraudulent, the Court must determine if the City has "at least a colorable cause of action" against the County under Ohio law. Jerome-Duncan, Inc. v. Auto-By-Tel, LLC, 176 F.3d 904, 907 (6th Cir. 1999). Any disputes or ambiguities concerning the applicable state law are resolved in favor of the City as the non-removing party. Alexander v. EDS Corp., 13 F.3d 940, 949 (6th Cir. 1994).

There is no dispute that the City's claims for money damages arising under the Cincinnati Municipal Code, and its claims of intentional interference and for punitive damages, do not seek any relief against the County. The City contends that the heart of its complaint, as was the case with its 2008 lawsuit, is the nuisance claims. As the Court's prior remand order noted, an Ohio nuisance complainant is required to serve all "interested parties," specifically defined as "any owner, mortgagee, lienholder, tenant, or person that possesses an interest of record in any property that becomes subject to the jurisdiction

of a court pursuant to this section ...". Ohio Rev. Code §3767.41(A)(4). If the property owner refuses to abate the nuisance conditions, a receiver may be appointed. All expenses incurred in the abatement process constitute a first and best lien on the property, superior to any county property tax liens. Ohio Rev. Code §3767.41(H)(2). The Court previously concluded that the County Treasurer falls within the definition of "interested party," because a successful nuisance claim could adversely affect county tax liens.

As a general rule, the existence of subject matter jurisdiction is determined by the complaint as it existed at the time of removal. See, e.g., Harper v. AutoAlliance Int'l, Inc., 392 F.3d 195, 210-211 (6th Cir. 2004). The City has alleged that it cannot identify all of the properties the Defendants "own" at any given moment in time, due to the rather fluid nature of the housing market and delays in processing title information through the county auditor's office. The complaint recites events concerning a specific property that was at issue in the 2008 lawsuit, 3142 Bracken Woods Lane. The City contends that Deutsche Bank admitted during a hearing in this Court that it held title to that property, and it agreed to a status quo order until the Court decided the City's motion to remand. It was later discovered that Deutsche Bank had transferred that property prior to the hearing, a fact its own lawyers apparently were not

-8-

aware of at the time. The Court has also reviewed some of the voluminous records submitted by the Defendants in support of their arguments that they do not own the vast majority of the properties identified in Exhibits A and B to the City's complaint. The transfer history on many of these properties reveals repeated transfers, oftentimes at greatly reduced prices. For example, the transfer history for the first property in Exhibit A, 1003 Beech Avenue, reflects that on February 7, 2007, the previous owner transferred title to "Deutsche Bank Trust Company AM" for $40,000. The next transfer occurred on July 11, 2011, from Deutsche Bank to "Residential Funding Company LL," and the same day a second transfer from Residential Funding to "Thor Real Estate LLC" with a listed price of $4,896. Thor Real Estate then transferred title on December 2, 2011 to an individual for $15,689. Similar transfer patterns can be seen on many other properties, including transfers to entities outside of Ohio such as "37th Parallel Properties, Inc." and "REO Nationwide LLC." These facts lend some credence to the City's allegation that it is difficult or impossible to track up-to-the-minute title information for any specific property, and to the City's contention that its claims are directed at "vacant, problem buildings and properties that have been or are owned" by the Defendants, as well as "all other properties now owned or hereinafter acquired by the banks that fail to meet the minimum

standards of property maintenance." (Doc. 29 at ¶20). Since there may be other properties discovered in the future that do have tax liens against them, the City contends that the Treasurer is a proper defendant.

The Sixth Circuit has held that "... the courts, not the parties, are responsible for aligning the parties according to their interests in the litigation. If the interests of a party named as a defendant coincide with those of the plaintiff in relation to the purpose of the lawsuit, the named defendant must be realigned as a plaintiff for jurisdictional purposes." <u>U.S. Fidelity & Guaranty Co. v. Thomas Solvent Co.</u>, 955 F.2d 1085, 1089 (6th Cir. 1992) (internal citation omitted). There, the court affirmed the district court's realignment of the parties which destroyed diversity. The action was originally brought by an insurer against a number of insureds and additional insurers seeking a declaration that it had no duty to defend or indemnify the insureds, and asserting contribution claims against the other insurers. The district court realigned all of the insurers as plaintiffs, and all of the insureds as defendants. The Sixth Circuit found that even though there was an **actual** conflict between the plaintiff and the insurer defendants as originally aligned, the primary issue in the case which required realignment was whether any of the insurers were obligated to defend or indemnify any of the insureds. The Sixth Circuit cited

Indianapolis Gas v. Chase National Bank, 314 U.S. 63 (1941), which held that in determining proper alignment of the parties, "whether the necessary collision of interests exists, is not to be determined by mechanical rules. It must be ascertained from the principal purpose of the suit, ... and the primary and controlling matter in dispute." Id. (internal quotations omitted). Here, if the County Treasurer is realigned as a plaintiff as Defendants seek, complete diversity would exist.

In CHRP v. Deutsche Bank, the plaintiff was a non-profit housing advocacy group operating within the City of Cleveland. Its complaint alleged that 25 vacant properties owned by Deutsche Bank were a public nuisance. It also alleged that Deutsche Bank's business practices with respect to foreclosures amounted to a common law nuisance. CHRP named the City of Cleveland as a defendant, alleging that the City "may have or claim to have some interest in real property that is the subject of this action by virtue of code violations, utility assessments and Nuisance abatement costs." CHRP v. Deutsche Bank, 606 F.Supp.2d 698, 709 (N.D. Ohio 2009). CHRP argued to the district court that the "ultimate purpose of this action is to abate the conditions creating a nuisance at the Properties, and complete relief requires action by the City and (therefore) the City's presence as an adverse party." Id. CHRP claimed that the City was or might be a lien holder on the properties, and that without the

City joined as a defendant, its interests would be jeopardized. The district court concluded that CHRP's purpose in joining the City as a defendant was ancillary to the primary goal of the lawsuit, to abate the conditions that created a nuisance. CHRP's interests in that primary goal were in fact allied with the City's, as illustrated by the City's cross-claims against Deutsche Bank for abatement costs and unpaid water bills.

The Sixth Circuit affirmed the realignment, finding that the City's interest in any assessments or liens on any of the properties was ancillary to the ultimate purpose of CHRP's lawsuit. It noted that all of the injunctive and declaratory relief sought by CHRP would undoubtedly benefit the City of Cleveland's interests. And any "potentially adverse interests" arising from any City liens on any of the properties were clearly secondary to the primary controversy. CHRP v. Deutsche Bank, 621 F.3d at 560. This conclusion was bolstered by the City's cross claims. The Sixth Circuit noted that in order to "find error in the district court's realignment of the parties, we would have to disregard the teaching of Thomas Solvent and Indianapolis v. Chase Nat'l Bank. This we are unwilling to do." Id.

Despite the City of Cincinnati's attempts to do so, the Court cannot meaningfully distinguish the circumstances presented in CHRP v. Deutsche Bank from the circumstances presented by the record in this case. The City of Cincinnati, as did CHRP,

-12-

contends that the primary goal of its lawsuit is to abate nuisances that have been and are being created by Defendants' actions and inactions with regard to properties within the City. The City argues that the County Treasurer, as CHRP argued about the City of Cleveland, may have some interest in some of the properties due to assessments or liens. The City argues that the County Treasurer must be joined as a defendant to ensure that complete relief on its claims can be granted. CHRP made the same argument with respect to Cleveland, alleging that City action would be required to demolish any of the blighted properties.

 The fact that CHRP is a non-profit agency and the City of Cincinnati is a unit of government does not, in the Court's view, distinguish these cases. It is not the legal status of the plaintiff, but the primary purpose of the lawsuit that is the critical question in determining realignment. And the fact that the County Treasurer has not asserted a cross-claim against the Defendants in this case, as the City of Cleveland had done in CHRP's lawsuit, is not determinative of whether its interests are aligned with the City's. The City argues that Hamilton County is not actively engaged in remediation efforts; even assuming that is true, it does not compel a conclusion that the County's interests with respect to the City's remediation efforts and its claims against the Defendants are **adverse**. In view of the Sixth Circuit's firm conclusion that reversing the district court's

-13-

realignment of CHRP and the City of Cleveland would be contrary to well-established precedent, the Court must conclude that realignment is proper in this case.

The Court also finds persuasive the Defendants' contention (which the City has not challenged) that the County Treasurer took no active role in the prior state litigation between these parties. After remand, the Treasurer did not attend or participate in any court status conferences nor submit written briefs on any motions filed in that case. When this Court remanded the City's previous case, the complaint had only recently been filed, and it was unclear at that very early stage of the case whether the City and County interests were aligned, or the extent of any real adversity between them. The history of the litigation in state court, as described by the Defendants, supports a conclusion that at this juncture the County Treasurer is not adverse to the City's claims, and should be realigned.

Given this conclusion, the Court will not address Defendants' alternative arguments concerning fraudulent joinder or whether the County Treasurer is a nominal party.

## CONCLUSION

After reviewing the record and the parties' arguments, the Court must conclude that the County Treasurer should be realigned with the Plaintiff, as its interests are not adverse to the City's with respect to the substantive issues raised by the

primary purpose of Plaintiff's complaint. The complaint does not establish the existence of an actual and substantial controversy between the City and the County Treasurer. Complete diversity therefore exists among the realigned parties, and this Court may exercise jurisdiction under 28 U.S.C. §1332.

For all of these reasons, Defendants' motion to realign (Doc. 34) is granted, and Plaintiff's motion to remand (Doc. 27) is denied. The parties shall confer upon an appropriate schedule to complete briefing on the pending motions to dismiss or for a more definite statement (Docs. 38, 40 and 41), and submit a proposed schedule to the Court no later than May 12, 2012.

SO ORDERED.

DATED: May 2, 2012        <u>s/Sandra S. Beckwith</u>
                          Sandra S. Beckwith
                          Senior United States District Judge